THE AGRICULTURAL BANK OF MISSISSIPPI AND OTHERS, PLAINTIFFS IN ERROR, *v.* CHARLES RICE AND MARY HIS WIFE, AND MARTHA PHIPPS, DEFENDANTS.

A bond for the conveyance of land does not transfer the legal title, so as to serve as a defence in an action of ejectment, and such a bond, when signed by married women, neither confers a legal nor equitable right upon the obligees.

In order to convey by grant, the party possessing the right must be the grantor, and use apt and proper words to convey to the grantee.

If, therefore, the title to land is in married women, and a deed for the land recites the names of the husbands, as grantors, purporting to convey in right of their wives, the deed is insufficient to convey the title of the wives.

Nor is such a deed made effective by its being signed and sealed by the wives. The interest of the husbands is conveyed by it, but nothing more.

A receipt of money, subsequently, by the female grantors, does not pass the legal title, nor give effect to a deed, which, as to them, was utterly void.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Mississippi.

It was an ejectment brought by the defendants in error against the Agricultural Bank and others, to recover two undivided third parts of a lot of ground in the city of Natchez, bounded as follows : — fronting on Main Street, between Canal and Wall Streets (formerly Front and Second Streets), beginning on Main Street, at the corner of a lot owned by the heirs of Samuel Postlethwaite, on which a large new cotton-warehouse has been erected ; thence along the northwestern side of Main Street, west, to the line of the lot bequeathed by Adam Bower, deceased, to his widow, now Mrs. Pendleton ; thence north, along the eastern line of the said last-mentioned lot, to the back line of the said premises, where the same bounds on the property formerly owned by Elijah Bell ; thence along said last-mentioned line, to the line of the lot belonging to the heirs of said Postlethwaite ; and along said last-mentioned line to the place of beginning, on Main Street ; and being the same property now known as the City Hotel, in Natchez.

The plaintiffs below claimed the lot as the heirs and devisees of Adam Bower, deceased, who died seized of the property, and the only question in the case was, whether or not they had conveyed away their title in the manner prescribed by law.

The circumstances are so fully set forth in the bill of exceptions, that a recital of the bill will be sufficient. The cause was tried at May term, 1843, when the jury, under the direction of the court, found a verdict for the plaintiffs.

### Bill of Exceptions tendered by the Defendants.

Be it remembered, that on the trial of this cause, and while the same was before the jury, the said plaintiffs, by their counsel, to maintain and prove the said issue on their part, gave in evidence and proved that one Adam Bower (now deceased), in his lifetime, previous to the year 1833, was seised in fee of a certain lot or parcel of land in the said declaration, and hereinafter described. That on the 16th of April, 1833, the said Adam Bower, being so seized of said land, died, leaving three daughters, to wit, Martha Phipps, wife of William M. Phipps ; Mary Haile, wife of William R. Haile ; and Sarah Bower, a feme sole, his heiresses, who took and inherited under the last will and testament of the said Adam Bower the said fee of the said land. That the said Martha, Mary, and Sarah, at the decease of the said Adam Bower, were infants under the age of twenty-one years. That since the death of the said Adam Bower, the said William M. Phipps and William R. Haile have both departed this life, and that since the death of the said William R. Haile, Mary Haile, his widow, has intermarried with Charles Rice, one of the plaintiffs. That at the time of the commencement of this suit, the said defendants were in possession of said premises, holding the same adversely.

The plaintiffs' counsel here rested.

Whereupon, the counsel for the said defendants, to maintain and prove the said issue on their part, gave in evidence, that after the death of the said Adam Bower, and while the fee of the said land was still vested in the said Martha, Mary, and Sarah, the said Noah Barlow and one Henry S. Holton contracted with the said heirs and their husbands aforesaid for the sale and purchase of the said lands, and in consideration that the said heirs would make and insure to them a good and valid title in fee simple to the said land, they agreed to give and pay to the said heirs for the same the sum of $40,000 ; $5,000 whereof should be paid in hand on the delivery of possession, and the residue should be secured to be paid in instalments, to be specified, in promissory notes, to be executed by the said Holton, and indorsed by the said Barlow, and by a mortgage on the said land. That the said Holton and Barlow, in pursuance of the said contract, paid the said $5,000 to the said heirs, and delivered to them twelve promissory notes for $2,916·66⅔ each, all bearing date the 16th day of April, 1835, and payable as follows : three of said notes in twelve months, three others in two years, three others in three years, and the other three in four years from the date thereof ; all made by the said Henry S. Holton, and indorsed

Agricultural Bank of Mississippi et al. *v.* Rice et al.

by the said Noah Barlow. And the said heirs, upon receipt of the said notes and the said sum of $5,000, delivered to the said Henry S. Holton and Noah Barlow possession of the said land, with the tenements and appurtenances, and at the same time executed to the said Holton and Barlow a bond for title, in and by which said bond the said heirs agreed and bound themselves, and their heirs, to make, execute, and deliver, after duly acknowledging the same, a full and complete general warranty deed of all said premises and appurtenances, buildings and furniture, to the said Holton and Barlow, their heirs and assigns, thereby covenanting a good and indefeasible title to said lot of ground to said Holton and Barlow, their heirs and assigns, against all persons, as soon as a surveyor can be had to make a survey of the premises to ascertain the exact boundaries. That the said bond was executed by the said Sarah, as Sarah Gibson, and by her husband, David H. Gibson, the said Sarah having intermarried with the said David H. Gibson between the drafting of the said bond and its execution; which said bond is in the words and figures following, to wit:—

Agreement entered into and executed this      day of April, 1835, between William M. Phipps and      his wife, William R. Haile and      his wife, and Sarah Bowers, parties of the one part, and Noah Barlow and Henry S. Holton, parties of the other or second part; the above-named parties of the first part, for the consideration hereinafter named, agree this day to deliver to said parties of the second part full possession of the tenements, tavern, stables, and other buildings occupied and owned by the late Adam Bower, and heretofore also occupied since his death by the said William M. Phipps, and the lot or parcel of ground upon which the same stands, being on the north side of Main Street, between Canal and Wall Streets, in said city of Natchez; and also the furniture, kitchen and household, as well as that about the stables, and belonging to and in said tavern, buildings, and said premises; and said parties of the first part do further, for the consideration hereinafter named, agree and bind themselves, and their heirs, to make, execute, and deliver, after duly acknowledging the same, a full and complete general warranty deed of all said premises and appurtenances, buildings and furniture, to said parties of the second part, their heirs and assigns, thereby conveying said lot of ground, appurtenances, and buildings, and said furniture, and warranting a good and indefeasible title thereto to said parties of the second part, their heirs and assigns, against all persons, as soon as a surveyor can be obtained to make a survey of said premises, so as to ascertain the exact extent and boundaries of said premises. In consideration of which, said parties of the second part agree to pay this day to said parties of the first part five thousand dollars, and upon the execution and delivery of the said deed to them as aforesaid,

·they, the said parties of the second part, their executors or admin-istrators, will execute and·deliver to said parties·their promissory notes for thirty-five thousand dollars, payable in one, two, three, and four years, in the following manner, — to be secured by a mort-gage executed by said parties of the second part, and their wives, on said premises, to wit :

| | |
|---|---|
| WM. M. PHIPPS. | [L. s.] |
| MARTHA PHIPPS. | [L. s.] |
| W. R. HAILE. | [L. s.] |
| MARY HAILE. | [L. s.] |
| D. H. GIBSON. | [L. s.] |
| SARAH GIBSON. | [L. s.] |

That the said bond, though apparently incomplete, was executed as complete, and the notes were secured by mortgage by said Hol-ton and Barlow, according to said contract. That after the exe-cution and delivery of said bond and notes, and when the said Hol-ton and Barlow were in quiet possession of the premises, they handed said bond to their counsel, with instructions to have a deed drawn in compliance with said·bond, and on·or about the 14th of Sep-tember, 1835, received from their counsel an instrument in writing, or deed, without examining the same, all parties supposing it to be correct, and in conformity with their directions ; that the said deed was executed and delivered on the said 14th of September, 1835, by the said heirs and their respective husbands. And it was intended by said heirs to convey to said Holton and Barlow the·complete title of the said heirs and their husbands in said land, which said deed is in the words and figures following, to wit : —

This indenture, made the 14th day of September, in the year of our Lord one thousand eight hundred and thirty-five, between William M. Phipps in right of his wife Martha, William R. Haile in right of his wife Mary, and David H. Gibson in right of his wife Sarah, legal heirs and representatives of Adam Bower, deceased, of the county of Adams and State of Mississippi, of the one part, and Noah Barlow and Margaret his wife, and Henry S. Hol-ton and Theoda his wife, of the same place, of the other part, wit-nesseth : that the said parties of the first part, for and in consider-ation of the sum of forty·thousand dollars, to them in hand paid by the said parties of the second part, at or before the sealing and de-livering of these presents, the receipt whereof is hereby acknowl-edged, and the said parties of the second part, their heirs, execu-tors, and administrators for ever released therefrom, by these pres-ents have granted, bargained, sold, conveyed, and confirmed, and by these presents do grant, bargain, sell, convey, and confirm unto the said parties of the second part, their heirs and assigns for ever, all that certain lot or parcel of ground situate in the city of Natch-

ez and State aforesaid, fronting on Main Street, between what were, before the confusion of names produced by the wisdom of the city council, Front and Second Streets, which said lot is bounded and described as follows, to wit : — beginning on Main Street, at the corner of a lot now owned by the heirs of Samuel Postlethwaite, on which a large new cotton-warehouse has been erected by Harriett    , along the northwestern side of Main Street, west, to the line of the lot bequeathed by Adam Bower, deceased, to his widow, now Mrs. Pendleton ; thence north, along the eastern line of said last-mentioned lot, to the back line of the premises hereby conveyed, where the same bounds on the property of Elijah Bell ; thence along said last-mentioned line to the line of the lot belonging to the heirs of said Postlethwaite ; and along said last-mentioned line to the place of beginning on Main Street ; the lot hereby conveyed being the large tavern establishment occupied by said Bower in his lifetime, and since his death by the said William M. Phipps ; also, all the household and kitchen furniture, and apparatus, and utensils about said tavern, stables, or other buildings on said lot ; together with all and singular, the appurtenances, hereditaments, privileges, and advantages whatsoever unto the above described premises belonging, or in any wise appertaining ; and also all the estate, right, title, interest, and property, and claim whatsoever, either at law or in equity, of them the said parties of the first part, of, in, and to the same ; to have and to hold the above granted, bargained, and described premises, with the appurtenances, unto the said parties of the second part, their heirs and assigns, for ever ; and the said parties of the first part, for themselves, their heirs, executors, and administrators, do covenant, grant, promise, and agree to and with the said parties of the second part, their heirs and assigns, that they, the said parties of the first part, and their heirs, the above described and hereby granted premises, and every part thereof, with the appurtenances, unto the said parties of the second part, and their heirs and assigns, against the said parties of the first part, and against all persons *or*  ·  claiming, or to claim said premises, or any part thereof, shall and will warrant, and by these presents for ever defend.

In witness whereof, the said parties of the first have hereunto set their hands and seals, this day and year above written.

|  |  |
|---|---|
| WM. M. PHIPPS. | [L. s.] |
| MARTHA PHIPPS. | [L. s.] |
| WILLIAM R. HAILE. | [L. s.] |
| MARY HAILE. | [L. s.] |
| DAVID H. GIBSON. | [L. s.] |
| SARAH GIBSON. | [L. s.] |

Signed, sealed, and delivered in the presence of

                 N   W. CALMES, *J. P.*

THE STATE OF MISSISSIPPI, *Adams county :*

Personally appeared before the undersigned, justice of the peace for said county, William M. Phipps and Martha his wife, and William R. Haile and Mary Haile his wife, and David H. Gibson and Sarah Gibson his wife, and acknowledged that they signed, sealed, and delivered the within deed on the day and year and for the purposes therein contained. And Martha Phipps, Sarah Gibson, and Mary Haile, wives of William M. Phipps, William R. Haile, and David H. Gibson, having been examined separate and apart from their husbands, and acknowledged that they signed, sealed, and delivered the same as their act and deed, free of fears, threats, or compulsion of their said husbands.

Given under my hand and seal, this 15th day of September, 1835.　　　　　　　　　　　　N. W. CALMES, *J. P.*

Received for record, 15th September, 1835.
　　　　　　　　　　　　　　　　F. WOOD, *Clerk.*
　　　　　　　　　　　　　　By S. WOOD, *D. Clerk.*

STATE OF MISSISSIPPI, *Adams county :*

I, Fleming Wood, clerk of the Probate Court for said county, do hereby certify that the within deed is recorded in my office, in book W of the record of deeds, pages 300 and 301.

Witness my hand and seal of office, this 16th day of September, anno domini 1835.

[L. S.]　　　　　　　　　　　　　F. WOOD, *Clerk.*
　　　　　　　　　　　　　　By S. WOOD, *D. Clerk.*

That in the said deed, by a mistake of the draftsman, the said heirs, Martha, Mary, and Sarah were not named as grantors, but that only their several husbands are so named, although said deed is executed by said heirs and their husbands.

That on the 14th day of September, 1835, on the delivery of said deed, the said Holton and Barlow executed, acknowledged, and delivered to the said heirs and their several husbands a deed of mortgage on said land, to secure the payment of said notes according to said contract. and the said notes and mortgages were accepted by said heirs and their husbands. That at the time of the marriage of the said Mary Haile with the said Charles Rice, in the year 1838, said Holton and Barlow were in quiet and peaceable possession of the said land, and ignorant of any objection to their title. That the buildings on said land, at the time of the purchase, having been destroyed by fire, the said Holton and Barlow rebuilt the same at an expense of $100,000, which improvements were made with the full knowledge of said heirs, and without any objection on their part. And that the said Martha Phipps and Mary Haile, now Mary Rice, by accepting and receiving payments of money from the said Holton and Barlow upon the said notes and

mortgage, during the time between the death of the said Phipps and Haile, and the last marriage of the said Mary, and when the said Martha and Mary were of full age, which said payments were proved to have been made and received, have further ratified and confirmed the said bond and the said deed.

That said Holton and Barlow, principally by reason of such expenditures, became largely indebted to the Agricultural Bank and the Planters' Bank, two of the defendants, and to secure that indebtedness, the said Barlow, on the 5th of May, 1838, executed to them a good and valid deed of mortgage, conveying to them his undivided interest in said premises.

That the said Holton, in February, 1839, sold and conveyed his interest in said premises to the said Demon B. Spencer, one of the defendants; that said Spencer, in consideration of the terms of his purchase from Holton, did, on the 27th of July, 1839, convey the same, by a good and valid mortgage, to the said Planters' Bank.

That the said Agricultural Bank and the said Planters' Bank are now in possession of said premises as mortgagees, and by virtue of a good and valid quitclaim deed from the said Sarah Gibson and her husband David H. Gibson.

That the said Holton and Barlow, and those claiming under them, were unmolested in their possession, and unapprized of any supposed objection to their title. That they have paid the whole of said purchase money.

Which testimony, as set forth herein on both sides, was all the testimony in the cause.

The counsel for the said defendants here offered to read in evidence the said bond for title, and the said deed herein before mentioned, in connection with the foregoing proofs.

But to the reading of the same in evidence the said counsel for the said plaintiffs objected, because he says, that at the days of the dates of the said bond and of the said deed the said heirs, Martha, Mary, and Sarah, were under coverture, and were infants under the age of twenty-one years, so that the said bond and the said deed are absolutely void. The said judge did then and there declare and deliver his opinion, that the said objection, so taken by the said counsel for the said plaintiffs, ought to be allowed; that the said bond and the said deed ought not to be admitted in evidence, and did accordingly decide that the same should not be read in evidence on the part of the said defendants; to which said opinion of the said judge, the said counsel for the said defendants did then and there, in due form of law, except, before the jury retired from their box, and prayed that the said exceptions might be signed, and sealed, and made a part of the record. And it is accordingly done.

S. J. GHOLSON. [L. s.]

*May 24th,* 1843.

To review this decision of the court below, the case was brought up to this court.

It was argued by *Mr. Mason* (Attorney-General), for the plaintiffs in error, and *Mr. Thomas J. Johnston* and *Mr. Crittenden*, for the defendants in error.

*Mr. Mason;* for the plaintiffs in error, stated the case, and then proceeded.

I. The title, bond, and deed were admissible in evidence. The common law imparted to the husband, as a necessary incident to the seisin he acquired of the wife's freehold estate by the marriage, a power, by alienation, of converting her interest in it to a mere right. Hence a conveyance by him of the fee operated a discontinuance, and ejectment would not lie; although, by the statute of 32 Hen. 8, ch. 28, § 6, explained by the statute of 34 and 35 Hen. 8, the act of the husband alone was not permitted to have this effect, and a right of entry was reserved to the wife, and to her heirs, on the death of the husband, it has never been questioned that she might, after the termination of the coverture, confirm her husband's deed. 1 Roper on Husband and Wife, 54, 55.

The deed from the husband is only a link in the chain of title, and was necessarily admissible, in connection with other testimony, to establish an act of confirmation by the wife, when sole and free from disability.

The reason assigned by the court below was wholly insufficient; neither the infancy nor the coverture of the femes covert necessarily excluded the deed.

There are many cases in which the deed of a married woman binds her, without confirmation, when sole, although, at its date, she was an infant; and the deed of a husband for his wife's real estate may be confirmed, and pass the title. Douglas's Rep. 53; Cowper's Rep. 202 ; 2 Peere Wms. 126. The deed from the husband is the basis, or first link, in the chain of title, and ought not to have been excluded. If the bond and deed had been admitted as evidence, and no sufficient confirmation by the wife, when sole, had been shown, it would have been competent for the court to charge the jury as to the sufficiency of these instruments in law to bind the wife's interests.

The court erred in excluding evidence which of itself was insufficient, but which, nevertheless, was competent.

II. It is submitted, that it appears on the record, notwithstanding this exclusion of the first link in defendants' paper title, that the female plaintiffs had ratified and confirmed the *bonâ fide* sale of the fee simple property after their disability was removed.

1. They received and gave acquittances of the purchase-money. They cannot be permitted to deny knowledge of the consideration

Agricultural Bank of Mississippi et al. *v.* Rice et al.

for which the payments were thus made. They had signed both bond and deed. The deed was acknowledged by them, and their relinquishment made privily, with full explanation, and the deed was of record.

2. The tenement on the premises was destroyed by fire, and they, free from disability, stood by and permitted the grantees of their husbands and themselves to erect buildings thereon, at a cost far exceeding the purchase-money, without interposing, by any warning that the title made was objected to and its confirmation denied; such acts, on the part of persons free from disability, ought to be regarded as confirmatory of a defective *bonâ fide* conveyance; and the parties, although they be females, will not be permitted to recover the property thus improved without objection on their part, and for which they have themselves received the full payment of the purchase money.

III. The deed is the act of the femes covert; they are parties to it, executed it, and the estate granted and intended to be conveyed was their property. The deed is between the legal heirs of Adam Bower, deceased, of the first part. Martha, wife of Phipps, Mary, wife of Haile, and Sarah, wife of Gibson, were the children and heirs of Bower. They signed the deed, and their renunciation was taken in substantial conformity with the law of Mississippi, and the thing granted was their inheritance. The phraseology employed is not material. A deed by an attorney in fact is valid, whether he signs as. B. W., attorney for R. C.; or R. C., by B. W., his attorney. 4 Hen. & Mun. 184.

The claim of title set up by two of these females, now that they are married to other husbands, is sustained by the most refined and technical reasoning. The printed argument of *Mr. Johnston* affords a specimen of this.

It is not denied, that, to bind a married woman by a deed executed with her husband during coverture, she must have acknowledged it in substantial conformity with the terms of the statute. The requisites are, —

1. A previous acknowledgment made by her, on a private examination, apart from her husband.

2. That she signed, sealed, and delivered the same as her voluntary act, freely, without any fear or compulsion of her husband.

3. And a certificate thereof, written on or under the said deed of conveyance, signed by the judge or justice before whom it was taken.

The statute of Mississippi does not prescribe the form of the certificate. The guards thrown around the rights of married women are contained in these requisites, and the deed is good and binding, if they have been substantially observed.

In Virginia there is a similar statute, with an additional section, prescribing the form of the wife's acknowledgment. Tucker, in

his Commentaries, vol. 1, tit. *Deeds of Feme Covert,* p. 267, after referring to these provisions of the Virginia statutes, remarks : —

" Here we see that the object of the law is to ascertain, by a privy examination of the wife, apart from her husband, whether, in the execution of the deed disposing of her rights, she exercises that free will which is of the essence of all contracts. This is effected by an examination in court by one of the judges thereof, or in vacation by two justices of the peace." (One is sufficient in Mississippi.) " Now, upon well received principles, it is clear that this act must be strictly pursued ; for it is an innovation upon the common law; and, moreover, it prescribes the mode in which a person may convey, who was before disabled to convey. That mode must, therefore, be pursued ; and as we do not pursue it if we vary from it, so it follows that it should be substantially, at least, complied with."

Acts of justices of the peace, done in the country, are always viewed favorably ; and, if substantially conformable to law, are held sufficient.

The certificate in this case is on the ninth page of the record. It is not denied that the justice of the peace was duly authorized to act, and that his official certificate was written on or under the deed. But it is objected, that he has not done or certified what the law requires.

There is no objection that the same certificate embraces two official acts. The first paragraph certifies the acknowledgment of all the parties to the deed, with a view to its record. That was a separate and independent act.

The second paragraph or sentence of the certificate is the subject of dispute. What does the justice certify?

1. That Martha Phipps, Sarah Gibson, and Mary Haile, wives of William M. Phipps, William R. Haile, and David H. Gibson, having been examined separate and apart from their husbands ;

2. Acknowledged that they signed, sealed, and delivered the same as their act and deed, free of fears, threats, or compulsion of their said husbands.

3. And these facts he certifies.

Now, is not this a substantial compliance with the statute ?

The objection to the grammatical construction of this sentence does not appear to me well founded. Its true reading is, that the justice certifies his having examined the wives separate and apart from their husbands ; and, on that examination, the wives, thus being separate and apart from their husbands, made the acknowledgment. Privy examinations in court and in the country have been long practised. The terms are technical. It is against the influence of the husband that the wife is protected ; and an examination is privy or private, within the statute, when he is not present. The casual presence of others would not vitiate it ; and

there is no just reason to infer, in this case, that any one was present. The statute requires a " private examination, apart from the husband." The justice certifies that he made an examination, separate and apart from the husband.

The statute requires a previous acknowledgment that she signed, sealed, and delivered the same as her voluntary act, freely, without fear, threats, or compulsion of her husband. The certificate is, that they acknowledged to have signed, sealed, and delivered the same as their act and deed, free of fears, threats, or compulsion of their husbands.

This court, in 12 Peters, 345, said, " The law presumes a feme covert under the coercion of her husband." It is against this presumed influence that the privy examination is intended to protect her, when the statute requires, that she shall acknowledge the same as her voluntary act freely, without fear ; and it means nothing more than that she shall declare her act to have been done free from such influences. This is done in the certificate, and the effective and essential words of the statute are employed. Hepburn v. Dubois, 12 Peters, 345 ; Shaller v. Brand; 6 Binney, 435 ; McIntire v. Ward, 5 Binney, 296 ; 1 Peters, 155.

There is no proof in the record that the femes covert were infants.

IV. It is objected that the acknowledgment of the femes is not recorded. By the record, it appears that the deed, with the certificate, which was an essential part of it, was received for record on the day after the execution ; and, on the next day, the clerk certifies that the within deed is recorded. It is an unauthorized conclusion, that the certificate was not recorded as a part of the deed.

No such objection appears to have been taken below, and there is nothing in the circumstances of this case to induce the court to presume defects which do not appear to exist in favor of the plaintiffs. But no question arose as to the record of the certificate. If the fact were so, it was sufficient ; but the court, by refusing to allow the deed to be read, deprived the defendants of the right to exhibit the proof, which, it is confidently asserted, was at hand to perfect their case, so far as the record of the certificate was required by law.

The defendants, bonâ fide, bought and paid for the property of the femes. They united in a bond and conveyance of the property ; when relieved from disability, they received the purchase money, and they stood by and permitted the innocent purchasers of this property to put on it improvements at a cost of more than one hundred thousand dollars, without interposing objection or assertion of title ; they have not proposed to return the purchase money, or to indemnify against the enormous expenditure for improvements. It can hardly be, that, under such circumstances, the claim

of title set up by their subsequent husbands can be successfully maintained by the refined and technical reasoning resorted to.

*Mr. J. J. Johnston,* for defendants in error.

The exceptions to the decision of the court below were taken and were confined to the rejection of two instruments of writing, which were offered in evidence on behalf of the defendants, now the appellants ; and, if they were properly rejected, the judgment must be affirmed.

The first of these was a bond, and the second a deed, in alleged pursuance of it, both purporting to have been executed, under coverture, by Mrs. Haile (now Mrs. Rice) and Mrs. Phipps, to persons under whom the appellants claim. The question of the title depends solely upon the validity of these conveyances.

I. 1. As to the bond, it is only necessary to refer to the case of Hickey's Lessee *v.* Stewart et al., which was decided, upon able debate and ample deliberation, at the last term of this court, wherein it was held, that an equitable title could not be set up either to sustain or to defeat an action of ejectment. 3 How. S. C. R. 760. Hence, had the bond been acknowledged by these married women, and otherwise valid, it was properly rejected by the lower court.

2. The same ceremony of an acknowledgment, on a private examination, is required, by the statute of Mississippi, in the alienation of equitable as in that of legal estates, both kinds of estate being within the terms and meaning of the statute : — " *No* estate of a feme covert shall hereafter pass by her deed or conveyance," &c. (quoted hereafter). Howard and Hutchinson, 347. So, in Ohio, leases by femes covert must be acknowledged. 6 Ohio R. 313. In this case, there is no certificate or acknowledgment whatever of the bond.

3. The bond of a married woman is, upon the general principles of the law, utterly void. 2 Kent, 168, 5th ed. ; 6 Wend. 1 ; 1 Bailey, 184 ; 2 Story's Eq. 617 ; 5 Day, 492 ; 7 Connect. R. 128.

II. The deed was properly rejected upon three grounds : —

1. Its intrinsic defect. Phipps, Haile, and Gibson grant, " in right of their wives," but these wives are not parties to the deed. It is true, their signatures are affixed, but their names are not in the body of the deed. Now, it is rather trite learning to say, and to say here, that there must be a grantor, a grantee, and a thing granted, to every deed that grants land ; that a grantor is as necessary as a grantee or thing granted ; or that the. is a place in a deed for the name of the party who grants, and that this place is not the bottom of the deed. This is a good conveyance of the life estates of Phipps, Haile, and Gibson ; the two former being

dead, and their wives never having been made parties to it by apt words, are not bound by it.

A deed of land, executed by husband and wife, but containing no words of grant by the wife, does not convey her estate in the land, nor her right of dower. 3 Mason's C. C. R. 347.

Where there are no grantors, there is no remedy even in equity 10 Ohio R. 305

A deed is invalid, though the feme covert be named in the premises, and her signature be affixed, if not named elsewhere. 7 Ohio R. 195.

2. The deed was properly rejected, because of the defective certificate of examination and acknowledgment.

The statute of Mississippi is as follows (Howard and Hutchinson, 347) : —

" No estate of a feme covert in any lands, tenements, or hereditaments, lying and being in this State, shall hereafter pass by her deed or conveyance, without a previous acknowledgment made by her, *on a private examination,* apart from her husband, before a judge, &c., that she signed, sealed, and delivered the same as her *voluntary act* and deed, *freely,* without any fear, threats, or compulsion of her husband, and a certificate thereof written on or under said deed or conveyance, and signed by the judge or justice before whom it was made ; and every deed or conveyance so executed and acknowledged by a feme covert and certified as aforesaid shall release and bar her right of dower in the lands, tenements, and hereditaments mentioned in such deed or conveyance."

It does not appear from the certificate in this case, that the acknowledgment of the married women was taken on a private examination, which is required by the statute.

In the first sentence of the certificate, the husbands and their wives all appear and act together ; in the second, the wives all appear and act together. For it is stated, — " And Martha Phipps, Sarah Gibson, and Mary Haile, wives of William M. Phipps, William R. Haile, and David H. Gibson, having been examined, separate and apart from their husbands, and acknowledged that they signed," &c. If grammatical construction require the insertion of the word " having " before the word " acknowledged," it is questionable whether there be any affirmative statement of the acknowledgment at all. If the word " separate," which is not in the statute, and imparts no vigor to its phraseology, be stricken out, the certificate will be, — " And Martha Phipps, Sarah Gibson, and Mary Haile, wives, &c., having been examined apart from their husbands," &c. It is in vain to call this an " acknowledgment made by her (them) on a private examination " ; for it eviscerates the very vitals of the statute. The examination may have

been not only apart and separate from their husbands, but private, or, in the language of Coke, *solely and secretly*, and yet the acknowledgment may have been made not only in the presence of the relatives, friends, and dependents of their husbands, but in that of the husbands themselves. The interpolation of the word "separate" imparts no strength to "apart," nor are they, separate and apart, or united, equivalent to *private*; *separate* having reference to the position of husband and wife, while *private* indicates the position of the magistrate and the wife in reference to the whole world besides. The two houses of Congress are separate and apart, but not very private; the chief-justice and his associates are separate and apart, yet together, constitute one public bench. The examination of married women, separate and apart from their husbands, though in the company of each other, would not be regarded as a compliance with the statute; yet it is obvious from the face of the certificate, that the three sisters, Mrs. Phipps, Mrs. Gibson, and Mrs. Haile, were all of them together, acting, acknowledging, and being examined; and, for aught that appears to the contrary, may have been surrounded, at the time of the acknowledgment, by the friends, relatives, and dependents of their husbands, and of their grantees, against whose arts and influences, if it do not appear by the certificate that the rights of the married women have been shielded and protected, the statute becomes a dead letter, and the private examination a mockery. The case of Jones *v.* Maffett and wife, 5 Serg. & Rawle, 534, was decided upon the ground that the Pennsylvania statute did not require a privy examination, but that it was sufficient if the feme covert were examined "separate and apart from her husband." There is a mutilated quotation, I believe, in the same case, of the maxim, "*omnia presumuntur rite esse acta*," which is severed from *donec probetur in contrarium*. The certificate annihilates the presumption.

The disability of coverture can only be overcome by the precise means allowed by law for the alienation of the real estate of married women (2 Story's Eq. 617), of which an essential part is a private examination, derived from the English mode of conveyance by fine, and rescued from its wreck. Lord Coke thus discourseth of the same:—

"The examination must be solely and secretly, and the effect thereof is, whether she be content of her own free good-will, without any menace or threat, to levy a fine of these parcels, and name them to her, every thing distinctly contained in the writ, so as she perfectly understand what she doth; and if the judge doubteth of her age, he may examine her upon her oath."—2 Inst. 515; 6 Wend. 12.

It is a general principle of American law, that all deeds of married women, without a privy examination, are void; 2 Lomax's

Dig. 18 ; and that all acts not conformable to acts of Assembly are void ; ibid. 52. Some States provide, simply, that there shall be a private examination upon the execution of a deed by a feme covert, and leave every thing else to the integrity and intelligence of the officers authorized to conduct it ; others prescribe the acts to be performed by the officer, such as reading the deed, making known its contents, or explaining its effects (12 Leigh, 464 ; 1 Binney, 477 ; 6 Serg. & Rawle, 50), without the performance of which the deed is inoperative and void. But it is obvious that the requirement of the private examination alone, and the requirement of the acts which constitute it, are the same thing, — the object of both being to remove the disability which results from the matrimonial connection, while they throw an intrenchment around the rights of the feme covert, who is hardly considered, in contemplation of law, to have a separate legal existence, her husband and herself constituting but one person. The sacred injunction, Whom God hath joined together, let no man put asunder, is, *pro hac vice*, disregarded, and the minister of the law is clothed with a confidence which is denied to the husband. The inefficient or negligent discharge of the duties of the office, which tend to its degradation, will neither be sustained by subtle construction, nor receive the countenance of courts of justice.

The words of the certificate are, that " they signed, sealed, and delivered the same as their act and deed, free of fears, threats, or compalsion of their said husbands " ; the language of the statute is, that " they signed, sealed, and delivered the same as their *voluntary* act and deed, *freely*, without any fear, threats, or compulsion of their said husbands." The omission of two words of such pregnant import, emphatically reiterated, as if to stamp freedom of volition not only on the act itself, but the manner of the act, is, I humbly submit, so utterly fatal to the certificate, as to render any further remarks unnecessary, except that, though an act done by a person capable of contracting would be presumed to have been voluntary, yet this is not that case ; and that each word of the certificate may be perfectly true, yet the deed may have been signed reluctantly and not voluntarily, sealed reluctantly and not voluntarily, and delivered reluctantly and not voluntarily.

III. The acknowledgment of the femes is not recorded, the certificate of the clerk embracing the deed only.

Be it remembered, that the deed was not proved as an original ; to be read otherwise than as such, both the acknowledgment and the certificate must be recorded. Howard and Hutchinson, 343.

It is not the fact, but the recording of the fact, that makes the deed effectual. Tate's Dig. 170 ; 1 Pet. 138, 140.

It is in the nature of a judicial proceeding, of which there must be a record.

IV. *Confirmation.* It may yet be contended, that the bond, or the deed, or the mortgage, was confirmed, after disability removed, and that the mode of confirmation was the receipt of money upon the notes given for the property for which suit was brought.

Void instruments are incapable of confirmation (Story's Cont. § 47 ; Plowden's R. 397), which must be by an instrument of as high a nature. 8 Taunt. 36 ; 10 Peters, 59.

A lease, which is void as to a remainder man, cannot be set up as a defence to an action of ejectment brought by him, although it be proved that he received rent, or suffered the tenant to make improvements. Law Lib., Oct., 1845, p. 300 ; Doug. 50.

Confirmation cannot be, unless with a knowledge of their rights. 5 Ohio R. 255.

To make an act amount to redelivery, there must be clear knowledge. 5 Dana, 234.

It must be known that receipt of money made good the redelivery 9 Dana, 477.

The act relied on here was the receipt of money upon the notes, without any reference whatever to the bond, deed, or mortgage, by payor or payee.

Upon the mortgage, which was not offered in evidence, no question was raised in the court below ; of course, none can be raised or considered here. 11 Wheat. 199.

The time when, and the character in which, this money was received will shed light upon the intention with which it was received, and the effect of its receipt.

The defects in the deed had not been ascertained when the payments were made. The bond was understood to be merged in the deed, and the deed was believed to be valid ; hence there could have been no intention to confirm what was already considered as obligatory. Suit was brought as soon as the deed was discovered to be defective. The effect of the receipt of money in a fiduciary character cannot prejudice the private rights of Mrs. Rice or Mrs. Phipps. By law, they could only receive it thus, since they had no right to the personalty of their respective husbands ; upon which, moreover, there was a statutory lien for their debts. The law will not put them in the predicament of saving their private rights by faithlessness to their trust, or losing their private rights by a faithful performance of the duties of executorship or administration.

There was neither instrument, act, nor intention of confirmation, nor knowledge of their rights, till suit was brought.

*Mr. Crittenden,* on the same side.

It might be dishonorable for any parties except married women to try and get this property back ; but the law is not friendly to their rights, and in nine cases out of ten, they do not know what they

are conveying away when they execute deeds.    In this case, the property belonged to the wife, but she is not named as a grantor in the deed, and therefore is not bound by it.    3 Mason's C. C. R. 347.

(*Mr. Crittenden* then examined the certificate of the magistrate, which he contended was not sufficient.)

It is argued that a subsequent acceptance of money by these wives, after the death of their husbands, reacts upon the original contract and confirms it.    But it cannot make a deed good which is intrinsically void.    Instruments may be confirmed in some cases, it is true, but only when they are valid for some purposes, and not where they are wholly void.    And besides, the confirming act must be performed with the intention and purpose of producing such a consequence.    It cannot be effected incidentally.    The mere receipt of money is not sufficient.

Mr. Chief-Justice TANEY delivered the opinion of the court.

This being an action of ejectment, the only question between the parties is upon the legal title.

It is admitted in the exception, that Mary Rice and Martha Phipps, lessors of the plaintiff, were each of them, as heirs at law of Adam Bower, entitled to an undivided third part of the premises mentioned in the declaration, in fee simple.    In order to show title out of them, the plaintiffs in error relied upon the bond of conveyance and deed, mentioned in the statement of the case, both of which were signed and sealed by these lessors of the plaintiff, but were executed while they were femes covert.

As regards the bond, it would not have transferred the legal title, even if all the parties had been capable of entering into a valid and binding agreement.    But as to the femes covert who signed it, it was merely void, and conferred no right, legal or equitable, upon the obligees.

The deed, also, is inoperative as to their title to the land.    In the premises of this instrument, it is stated to be the indenture of their respective husbands in right of their wives, of the one part, and of the grantees, of the other part, — the husbands and the grantees being specifically named ; and the parties of the first part there grant and convey to the parties of the second part.    The lessors of the plaintiff are not described as grantors ; and they use no words to convey their interest.    It is altogether the act of the husbands, and they alone convey.    Now, in order to convey by grant, the party possessing the right must be the grantor, and use apt and proper words to convey to the grantee, and merely signing and sealing and acknowledging an instrument, in which another person is grantor, is not sufficient.    The deed in question conveyed the marital interest of the husbands in these lands, but nothing more.

It is unnecessary to inquire whether the acknowledgment of the femes covert is or is not in conformity with the statute of Mississippi. For, assuming it to be entirely regular, it would not give effect to the conveyance of their interests made by the husbands alone. And as to the receipt of the money mentioned in the testimony, after they became sole, it certainly could not operate as a legal conveyance, passing the estate to the grantee, nor give effect to a deed which as to them was utterly void.

The judgment of the Circuit Court is therefore affirmed.